UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| PATRICK SHAWN LEO, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 06-87-P-S |
| | ) | |
| | ) | Civil No.  08-46-P-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Patrick Leo was convicted on February 8, 2007, for possession of a firearm and ammunition by a felon and sentenced to 188 months in prison after he qualified as an armed career criminal.  Leo now presses a 28 U.S.C. § 2255 motion listing four grounds.  His first ground is that he instructed his attorney to file a notice of appeal but his attorney "flat-out refused to do so."  The three other grounds raised by Leo pertain to his sentencing; presumably these are the grounds that Leo thinks could have been raised in his direct appeal he insists that he expressed a desire to pursue to his attorney.

*Discussion*

Leo's first 28 U.S.C. § 2255 ground is that after he was sentenced to 188 months in prison per the Armed Career Criminal Act (ACCA) he instructed his attorney to file a notice of appeal, but his attorney "flat-out refused to do so."

Leo attaches a declaration to his motion, signed under penalty of perjury.  It states:

1. After pleading guilty to a single count of being a previously convicted felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) my attorney informed me that I was looking at approximately seven years of incarceration.  He did not mention ACCA.

2. I entered my plea of guilty just two weeks after being formally indicted without having entered into any plea negotiations with the U.S. Atto[r]ney's Office.
3. I have not and will not waive my right to appeal any adverse sentencing implications resulting from my plea.
4. During the conclusion of the sentencing hearing, the Court inquired whether I wanted to appeal the sentence imposed, and my lawyer stated that we would discuss it later, even though I had indicated that I wanted to appeal.
5. At the Cumberland County Jail in Maine, I called my attorney, Mr. Robert M. Napolitano and specifically requested him to file an appeal of the Court's sentence.
6. In response, Mr. Napolitano stated in no uncertain terms that "I will not do that," explaining that he had previously made arrangements with the state prosecutor not to appeal the federal sentence. Nevertheless, I protested, and again asked him to file an appeal; he refused.
7. Mr. Napolitano refused to do anything more for me after I was sentenced.

(Leo Decl. at 1, Doc. No. 1-2 at 9.)

Leo also has attached a letter addressed to him from Attorney Napolitano dated January 11, 2008. Therein Napolitano informs Leo:

> As I told your mother on the phone, I do not do Post Convictions against other lawyers. Your mother paid me $5,000.00 to represent you on 9 cases. I did the best I could for you. It is your past record that put you in the position you are in now. In addition, I offered to help your wife and I represented her in 6 cases, in two different counties. So I did a total of 14 cases for $5,000.00 for you.
> The Detainer is for your concurrent sentences due to the State of Maine. The State does that in cases where the appeal process is still pending. It is to protect them in case you win and are released from the Federal system. It is the State[']s way of insuring that you will serve your time owed to them. It is mandatory and no one can lift that Detainer until all the appeal processes are exhausted.
> I will **not** be filing anything further for you. I told your mother that yesterday when she was looking for a lawyer. I have more than fulfilled my legal obligations to you by representing you and your wife in 14 cases for $5,000.00. I am sorry this is not the news you were looking for.

(Doc. No. 1-3 at 1.)

Responding to Leo's 28 U.S.C. § 2255 motion, the United States has submitted the affidavit of Leo's attorney, Robert Napolitano. This affidavit contains the following statements:

1. On February 8, 2007, before commencement of Patrick Shawn Leo's sentencing hearing, I consulted with him, in prisoner lock-up, about an appeal. Attached as Exhibit A is a copy of the Marshall Service record of visitors dated February 8, 2007. During that visit,

2

> Leo wanted to know if filing an appeal might risk his receiving a longer sentence if it failed. I advised him that generally failed appeals do not result in longer sentences, but that I could not make any definite predictions. He did not give me any express instruction to appeal.
> 2. At the sentencing hearing on February 8, 2007, after the Court described Leo's right to an appeal, I consulted with him in an off-record conversation. Leo confirmed with me that he did not wish to file an appeal because he did not want to risk receiving a longer sentence.
> 3. After the off-record conversation, Leo stated to the Court that he did not wish to appeal. Leo heard me confirm to the Court that he did not wish to take an appeal and he made no objections to my statement to the Court.
> 4. As Exhibit B, a copy of the Cumberland County Jail Visitor's Log, confirms on February 12, 2007 I visited Leo at the Cumberland County Jail to consult further with him about filing an appeal. I explained to him that he had no grounds to appeal because he did not raise an objection to the content of his Presentence Investigation Report. I also explained to Leo that even if he wanted to appeal, I could not represent him on it under the terms of my retainer. Leo did not instruct me to file an appeal. I brought him a Form for Selection of Counsel on Appeal in the event that he decided to pursue one. A copy of the Form for Selection of Counsel on Appeal that I prepared for Leo is attached as Exhibit C. To my knowledge, Leo never signed it.
> 5. The January 11, 2008 letter I sent to Leo, where I stated that I would not file anything further for him, refers to my refusal to file collateral challenges to his state convictions in Cumberland County Superior Court (docket numbers 06-2203, 06-2541, 06-2752, 06-3147, and 06-2341) and York County Superior Court (docket Number 06-2035). This letter does not refer to his federal conviction.

(Napolitano Aff. At 1-2; Doc. No. 7-2 at 1-2.) Attached to this affidavit is a copy of a form for selection of counsel on appeal in which there is a handwritten check in front of the option: "I request that the Court appoint new counsel to represent me." It is hand-dated Feb 12, 07; Leo's name and address is entered and there is an "X" mark in front of the Signature line. (Doc. No. 7-2 at 6.) It appears that Attorney Napolitano filled in this information although there is no way of verifying that he did fill in this information before his meeting with his client beyond crediting his affidavit statement. The date is circled as if in emphasis and I assume that this mark was not on the form Napolitano avers he provided Leo.

As represented in this letter the sentencing transcript documents that Leo was advised of his right to appeal by this Court:

3

>     Mr. Leo, I must advise you that you have a right to appeal the conviction as well as the sentence. If you wish to effectively exercise that right of appeal, you must cause to be filed with the Clerk of this Court within ten days of today, and not after that, a written notice of appeal. If you fail to timely file that written notice of appeal, you will have given up your right to appeal the conviction and the sentence.
>     If you cannot afford to file the appeal, the appeal will be filed without any cost to you and on your request, the Clerk of this Court will immediately prepare and file that notice of appeal for you; do you understand?

(Sentencing Tr. at 25-26.) After conferring with counsel, Leo declared: "I don't want to appeal, Your Honor." (Id. at 26.) His attorney said: "He has indicated to me he does not wish to appeal." (Id.)

In his supplemental declaration filed with his reply memorandum, Leo swears to the following under penalty of perjury:

1. I am a pro se federal prisoner residing at the United States Penitentiary in Lewisburg, Pennsylvania.
2. I have prepared my § 2255 Motion and Declaration with the assistance of an inmate writer. During the preparation of my first Declaration a typographical error at ¶ 1 exists where the beginning of the sentence starts with "after" instead of "before." Accordingly, I respectfully request that Court to liberally construe the correct introduction to ¶ 1 of my February 7, 2008 Declaration to read "Before pleading guilty…"
3. During the off the record side-bar with counsel at the Sentencing Hearing after the Court inquired whether I wanted to appeal I distinctly remember stating to my lawyer Mr. Napolitano: "lets appeal the sentence," to which he responded: "it's been a long day, we can deal with it later …" This is the truth of the matter to which I am willing to testify under oath.
4. At the presentence conference on February 8, 2007 the discussion between myself and Napolitano pertained exclusively to the sentencing procedure that was about to commence. He instructed me to look at him before answering the Court's question for an affirmative or negative nod or verbal response. We did not discuss anything at all related to an appeal. I did not instruct him to appeal at this pre-sentence conference precisely because I had not been sentenced. This is the truth of the matter to which I will testify under oath.
5. At the post-sentence conference at Cumberland County Jail Napolitano and I discussed the pending state charges and how they were to be resolved. I explicitly asked him to appeal the federal sentence I received but he refused to do so explaining to me that the State had only agreed to concurrent time because Napolitano had promised the state prosecutor that I would be getting 188-months with the feds. In any event, I received a ten-year concurrent state

4

>  term of imprisonment, the imposition of which was directed by state law and
>  not by any recommendation by state prosecutors. This is the truth of the
>  matter to which I will testify under oath.

(Reply Mem. at 15.)

Leo wants an evidentiary hearing on his ineffective assistance claim. He cites to Roe v. Flores-Ortega, 528 U.S. 470 (2000) in support of his argument that he is entitled to an evidentiary hearing because there is a factual dispute as to whether or not he instructed his attorney to file the appeal and as to whether or not his attorney actually supplied him with a form for selection of counsel on appeal after indicating that he would not handle the appeal. Flores-Ortega held "that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." 528 U.S. at 484. In other words, even though there is a presumption of prejudice, the Strickland analysis does not go by the wayside on facts like this. Id. at 477; see also United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir.2000) (citing Roe v. Flores-Ortega, 528 U.S. at 477-83).

Here we have a consultation that – in Leo's version, amounted to a refusal to file the appeal. However, Flores-Ortega addressed a situation in which counsel did not consult with the defendant and framed the question: "Under what circumstances does counsel have an obligation to consult with the defendant about an appeal." 528 U.S. at 478. The Supreme Court also provided the following guidance about hypothetical interactions between counsel and his client:

>  [S]uppose that a defendant consults with counsel; counsel advises the defendant
>  that a guilty plea probably will lead to a 2 year sentence; the defendant expresses
>  satisfaction and pleads guilty; the court sentences the defendant to 2 years'
>  imprisonment as expected and informs the defendant of his appeal rights; the
>  defendant does not express any interest in appealing, and counsel concludes that
>  there are no nonfrivolous grounds for appeal. Under these circumstances, it would
>  be difficult to say that counsel is "professionally unreasonable," [Strickland, 466
>  U.S.] at 691, as a constitutional matter, in not consulting with such a defendant

5

>regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.
>
>>We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. See id., at 690 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Id. at 479-80.

And, according to Leo's own affidavit, he knew as of the February 12, 2007, meeting at the Cumberland County Jail  -- whether or not he received the choice of counsel form – that Attorney Napolitano was not going to pursue the appeal.  He took no action to contact the Clerk within the ten days he knew he had per the Court's instruction and the next this court heard from him was the February 11, 2008, filing of this 28 U.S.C. § 2255 motion. See cf. Wims v. United States, 225 F.3d 186, 190 -91 (2d Cir. 2000); see also Stanley v. McKune, No. 05-3100, 2005 WL 1208931, 2 (10th Cir. May 23, 2005) (six year delay).  At the very least this delay by Leo in seeking relief is probative of whether or not Leo really intended to pursue an appeal in the immediate aftermath of his sentencing.  Furthermore, although Leo insists that the January 2008

letter from his former attorney to him could only be addressing his right to a direct appeal apropos his federal sentence, the letter clearly contradicts that assertion.

Given the Roe v. Flores-Ortega presumption and push towards reinstating the right of appeal, at first blush it would appear that an evidentiary hearing is called for to resolve the clear factual disputes. However, I do not read Roe v. Flores-Ortega as simply providing a blueprint for defendants as to how to get an evidentiary hearing when complaining about one's attorney's conduct vis-à-vis the parameters of the consultation regarding the appeal. In a situation such as this one, where it is undisputed the consultation took place and the sole issue is whether the attorney was told to file and refused to do so, I would assume for the purposes of this 28 U.S.C. § 2255 motion that Leo's version of events is the true one and that this satisfies the "cause" showing for procedural default of his claims that could have been but were not raised in a direct appeal. See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 168 (1982); Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002). I note that Leo never maintains that he would have gone to trial instead of pleading guilty.[1] Two of his claims solely relate to the court's sentencing discretion and the one pertaining to his ACCA status is a non-starter due to his criminal history. As set forth below, even crediting Leo's assertion that his attorney, after consultation, refused to pursue an appeal on Leo's behalf and did not provide him with the selection of counsel form, I do not think that "there are nonfrivolous grounds for appeal." Flores-Ortega, 528 U.S. at 479.

***Court's Misapprehension of it Discretion under the United States Sentencing Guidelines***

Leo was sentenced on February 8, 2007. In his first non-ineffective assistance ground he argues that this court did not sentence him appropriately under the United States v. Booker, 543

---

[1] There is no basis for an "actual innocence" argument.

7

U.S. 220 (2005) remedial opinion and 18 U.S.C. § 3553(a).  He believes that in light of Booker and Kimbrough v. United States, __ U.S. __, 128 S. Ct. 558 (Dec. 10, 2007),

> and in consideration of 18 U.S.C. § 3553(a) instructing district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense,""to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes from the defendant," … the addition of eight months to the mandatory minimum 180-months exceeds the 3553(a) sentencing factors.

(Sec. 2255 Mem. at 4.)    This Court can draw on its first-hand knowledge of the sentencing in weighing the merits of this argument. See United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."); see also, e.g., Sanford v. United States, 495 F.Supp.2d 151, 155 (D.Me.2007).

Booker was decided on January 12, 2005.  This Court had been sentencing under the Booker  paradigm for over two years before it sentenced Leo.  Kimbrough addressed a sentencing court's discretion to deviate from the guidelines with regards to the 100-to-1 cocaine/crack ratio, although it admittedly provides guidance to sentencing courts as to their general discretion under the guidelines, as did Gall v. United States, __ U.S __, 128 S. Ct. 586 (Dec. 10, 2007) which issued the same day.  There is nothing that I could identify in the criminal record that would indicate to me that this Court would have exercised its discretion any differently had it had Kimbrough and Gall to guide it.

The Court expressly indicated:

> I've determined the sentence I'm going to impose is sufficient but not greater than necessary to effectuate the goals of 18 USC Section 3553(a).
> The sentence I've carefully considered is in the sentencing range set forth in the advisory sentencing guidelines.  I note that I give the guidelines no

8

>controlling weight.  I believe the sentence in this case is compatible with the guideline range because of the circumstances in this case.
>
>In setting the sentence, I've taken into account those factors set forth in 18 U.S.C. Section 3553(a), including specifically and most importantly the nature and significant circumstance of this offense, the history and record of the defendant, the seriousness of the offense, and  the need for protection of the public from further crimes of this defendant.
>
>Mr. Leo, … I'm impressed with the fact that your family came out in force today and indicated their love and affection for you.  It's rare that this many people show up for any defendant.
>
>However, I can't help but also be impressed by the criminal record that starts at age 15.  You have multiple criminal trespasses, many involving alcohol and moving on at age 18 to assault, at age 19 to burglary, at age 21 criminal threatening with a dangerous weapon, burglary of a motor vehicle, theft, age 28 criminal threatening, age 30 possession of burglary tools, age 30, burglary multiple times and criminal threatening with a dangerous weapon.
>
>That's a criminal record of somebody who really is a danger to society.  In this case, the record reveals that a car was burglarized and a .357 revolver was stolen along with ammunition.  That gun was used by you in threatening another individual while you were admittedly under the influence of multiple drugs.  It's only by the grace of God something didn't happen and you would be facing a murder charge in state court.
>
>At some point, regardless of whether your conduct is caused by your nature or by drugs or something else, society has the right to be protected from thefts or threats or assaults or any number of other issues involved in your conduct.

(Sentencing Tr. at 19-21.)

*Consolidation of Prior-Convictions*

In his second non-ineffective assistance ground Leo maintains the United States Sentencing Commission amendments to the sentencing guidelines include a provision regarding the applicability of consolidated priors for purposes of applying the ACCA.  He expressly identifies this ground, in particular, as the non-frivolous ground for which a statutory appeal of right can be taken.  (Sec. 2255 Mem. at 5.)

As the United States points out, Leo made no objection to the contents of his presentence report. (See PSI at 20; Sentencing Tr. at 3, 6, 18.)  The report listed fifteen adult convictions, nine of which were attributed points, resulting in a criminal history score of 22.   The four

9

convictions listed in the indictment and prosecution version were: a burglary conviction on August 23, 1994; a criminal threatening with the use of a dangerous weapon conviction also on August 23, 1994; a burglary conviction on March 9, 2004; and a burglary conviction on June 11, 2004. Thus, two of the ACCA predicate convictions were imposed on the same day.

Amendment 709 "provided that two prior convictions are counted as one if the resulting 'sentences were imposed on the same day.'" United States v. Godin, 522 F.3d 133, 134 (1st Cir. 2008) (quoting U.S.S.G. § 4A1.2(a)(2) (2007) and U.S.S.G., Supp. to App. C, Amendment 709 (2007).) However, "the amendment was substantive and non-retroactive." Id. at 136. As I am assuming for the sake of this recommended decision that Leo could demonstrate cause for not raising this ground on direct appeal, it would then fall to this Court to "to consider the Commission's current thinking for whatever use it may be in exercising the court's judgment about the proper sentence." Id.

However, the glaring problem with Leo's argument on this score is that he had four prior-convictions relied on for his ACCA and criminal history determination and, so, even if one collapsed the two August 23, 1994, convictions into one, Leo still qualified as an Armed Career Criminal. I can see nothing in the record to suggest that the court would have exercised its sentencing discretion any differently than it did had these arguments been raised.

***Right to Have All Sentencing Factors Charged in the Indictment and Subject to Proof Beyond a Reasonable Doubt***

Leo maintains in his final ground that he was entitled to have his prior-convictions charged in the indictment. It is first worth noting that, as set forth above, the indictment and prosecution version listed four prior convictions.

This spring the First Circuit addressed a challenge on all fours[2] with Leo's in <u>United States v. Diaz</u>:

> Diaz also protests the ACCA sentencing enhancement applied by the district court, arguing that his Sixth Amendment rights were violated because the enhancement was based on prior convictions that were never presented to the jury and proved beyond a reasonable doubt. Constitutional challenges to ACCA enhancements are subject to de novo review. See <u>United States v. Duval</u>, 496 F.3d 64, 80 (1st Cir.2007).
> We hold, as we have held before, that this argument is foreclosed by <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226-27 (1998)(holding that fact of prior conviction for sentencing purposes need not be proved to jury beyond reasonable doubt). See <u>United States v. Earle</u>, 488 F.3d 537, 549 (1st Cir.2007); [<u>United States v.</u>] <u>Ivery</u>, 427 F.3d [69,] 74- 75 [(1st Cir. 2005)]. Diaz notes that Justice Thomas, in a recent concurrence, cast doubts on the continuing viability of <u>Almendarez-Torres</u>. See <u>Shepard v. United States</u>, 544 U.S. 13, 27-28 (2005)(Thomas, J., concurring). Diaz relies on a line of Supreme Court cases from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), through <u>Shepard</u> and <u>United States v. Booker</u>, 543 U.S. 220 (2005), to buttress his argument. This court has rejected nearly identical arguments in the past, however, observing that "[t]he <u>Shepard</u> majority noted the possibility that <u>Apprendi</u> may eventually be extended to require proof of prior convictions to a jury, but cautioned that this 'is up to the future to show.' ... [B]oth <u>Blakely</u> and <u>Booker</u> recognized the continued viability of the <u>Almendarez-Torres</u> exception." <u>Ivery</u>, 427 F.3d at 75 (quoting <u>Shepard</u>, 544 U.S. at 26 n. 5). Unless and until a majority of the Supreme Court decides otherwise, <u>Almendarez-Torres</u> continues to be binding precedent upon this court. See <u>Earle</u>, 488 F.3d at 549 (affirming that we remain bound by <u>Almendarez-Torres</u>).

519 F.3d 56, 67 (1st Cir. 2008). Accord <u>United States v. DeLeon</u>, 444 F.3d 41, 55 (1st Cir. 2006). Indeed, in his 28 U.S.C. § 2255 memorandum and his reply memorandum Leo recognizes that this Court is bound by the precedents (Sec. 2255 Mem. at 6 n.1; Reply Mem. at 13) and I take him to be raising this ground in the hopes of obtaining review of the question by some higher court.

---

[2]   Diaz did proceed to trial whereas Leo pled guilty.

11

## *Conclusion*

For the reasons above I recommend that the Court summarily deny this 28 U.S.C. § 2255 motion.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 26, 2008

/s/Margaret J. Kravchuk